FILED

17 AUG -1 AM 10:35

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
                    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

|  |  |
|---|---|
| GENERAL LAND OFFICE OF THE STATE OF TEXAS,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR, ET AL.,<br><br>Defendants,<br><br>Travis Audubon Society, Texas Ornithological Society, Center for Biological Diversity, and Defenders of Wildlife,<br><br>Defendant-Intervenor-Applicants. | Civil No. 1:17-cv-00538-SS |

**MOTION OF TRAVIS AUDUBON SOCIETY, TEXAS ORNITHOLOGICAL SOCIETY, CENTER FOR BIOLOGICAL DIVERSITY, AND DEFENDERS OF WILDLIFE TO INTERVENE AS DEFENDANTS**

Travis Audubon, the Texas Ornithological Society, the Center for Biological Diversity, and Defenders of Wildlife (collectively, "Applicants") respectfully move to intervene as of right in this action, or in the alternative, for permissive intervention. Fed. R. Civ. P. 24. The Applicants seek this intervention to defend the current status of the golden-cheeked warbler under the Endangered Species Act ("ESA") and to defend the U.S. Fish and Wildlife Service's ("FWS" or "the Service") decision to reject a petition to remove the golden-cheeked warbler from the Federal List of Endangered and Threatened Wildlife.

The Applicants conferred with the parties to this case regarding this motion. Federal Defendants oppose Applicants' motion to intervene. Plaintiff also opposes Applicants' motion.

As explained in the memorandum in support of this motion and supporting declarations, the Applicants meet the four requirements of Rule 24(a)(2) to intervene as of right: (1) this

motion is timely, (2) the Applicants have an interest relating to the agency action at issue in this litigation, (3) as a practical matter, the Applicants' interests may be impaired or impeded by this litigation, and (4) the existing parties do not adequately represent the Applicants' interests. *Entergy Gulf States La. v. U.S. Envtl. Prot. Agency*, 817 F.3d 198, 203 (5th Cir. 2016) (citing *Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs of the Orleans Levee Dist.*, 493 F.3d 570, 578 (5th Cir. 2007)). The Applicants also meet the test for permissive intervention because they have a claim or defense that shares common questions of law and fact with those raised in this case. Fed. R. Civ. P. 24(b). Concurrent with this motion, supporting memorandum, and declarations, the Applicants also are a filing proposed answer to the Plaintiff's complaint, as required by Federal Rule of Civil Procedure 24(c).

# MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE AS DEFENDANTS

## I. INTRODUCTION

The General Land Office of the State of Texas ("Plaintiff") is challenging FWS's negative 90-day finding on a petition, submitted by Texans for Positive Economic Policy et al., to delist the golden-cheeked warbler (*Setophaga chrysoparia*). FWS rejected the petition because they found it did not present substantial scientific or commercial information showing delisting may be warranted. 81 Fed. Reg. 35,698 (June 3, 2016). The Applicants seek to participate in this litigation because they and their members have a great interest in protecting the golden-cheeked warbler and ensuring the protections provided to it by the ESA are fully defended and upheld. This motion is timely, and the Applicants meet all of the requirements to intervene as of right under Rule 24(a). If this Court determines otherwise, the Applicants respectfully request this Court grant them permissive intervention under Rule 24(b).

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Golden-cheeked Warbler

The golden-cheeked warbler is a small songbird endemic to central Texas with striking yellow markings on its face. Each year, bird watchers from around the world visit the 33 counties in Central Texas that comprise the golden-cheeked warbler's only known breeding ground. Marshall Dec. ¶ 7, Hargis Dec. ¶ 8, Stone Dec. ¶ 8, Rivet Dec. ¶ 7. However, the golden-cheeked warbler and its limited breeding habitat face numerous significant threats. Specifically, the primary threat to golden-cheeked warblers is the development and clearing of old-growth Ashe juniper trees whose bark golden-cheeked warblers rely upon to make their nests. Golden-cheeked warbler (*Setophaga chrysoparia*) 5-Year Review: Summary and Evaluation ("5-Year Review"), U.S. Fish and Wildlife Service, Austin Ecological Services Field Office, at 15 (Aug. 26, 2014). In addition to habitat destruction and fragmentation, golden-cheeked warblers are threatened by increased parasitism and climate change. *Id.* at 9, 12–14.

### B. ESA Protections for the Golden-cheeked Warbler

The FWS first proposed to list the golden-cheeked warbler in May of 1990 noting "habitat loss and fragmentation [resulting] from widespread clearing of juniper as a range management practice, and urban encroachment...." 55 Fed. Reg. 18,846 (May 4, 1990). Concurrently, FWS exercised its emergency authority to temporarily list the golden-cheeked warbler as endangered because of "[o]ngoing and imminent habitat destruction[,]" resulting in some of the "best golden-cheeked warbler habitat" already having been lost. 55 Fed. Reg. 18,844 (May 4, 1990). The golden-cheeked warbler was later listed as an endangered species that same year. 55 Fed. Reg. 53,154 (Dec. 27, 1990). While habitat loss and fragmentation were, and are, the primary threat to golden-cheeked warblers, FWS also noted that fragmentation resulted in increased parasitism by the brown-headed cowbird. *Id.* Recently, in 2014, FWS completed a five-year review of the golden-cheeked warbler, recommending no change in its classification because the golden-cheeked warbler "continues to be in danger of extinction throughout its range" due to "ongoing, wide-spread destruction of its habitat," amongst other threats. 5-Year Review, at 15.

### C. Travis Audubon, et al.

Travis Audubon, the oldest conservation organization in Austin, Texas, was founded in 1952, and is a non-profit organization and an independent chapter of the National Audubon Society. Marshall Dec. ¶¶ 2–3, Ladd Dec. ¶ 3. Travis Audubon recognizes the connection between conserving wildlife habitat and the ecological balance that is necessary for healthy, sustainable, and habitable communities. Marshall Dec. ¶¶ 2–4; Ladd Dec. ¶ 3. The golden-cheeked warbler has deep institutional significance for Travis Audubon; the bird is its logo and Travis Audubon has worked to protect the species since at least 1966. Marshall Dec. ¶¶ 8, 10.

The Texas Ornithological Society ("TOS") is a non-profit organization that was founded in 1953. Hargis Dec. ¶ 1. Its purpose is to promote the discovery and dissemination of

knowledge of birds; to encourage specifically the observation, study, and conservation of birds in Texas; to encourage the formation of local birding clubs; and to stimulate cooperation among professional ornithologists. *Id.* TOS has over 900 members who live, work, and/or recreate in areas occupied by the golden-cheeked warbler. *Id.* at ¶¶ 1–2.

The Center for Biological Diversity (the "Center") is a non-profit 501(c)(3) organization with over 58,000 active members and over 1.3 million online activists dedicated to the protection of endangered species and wild places. Greenwald Dec. ¶ 2. The Center works through science, law, and creative media to secure a future for all species, great or small, hovering on the brink of extinction. *Id.* The Center and its members are concerned with the conservation of imperiled species, including the golden-cheeked warbler, and the effective implementation of the ESA. *Id.* at ¶¶ 2, 5–8.

Defenders of Wildlife ("Defenders") is a not-for-profit conservation organization and is recognized as one of the nation's leading advocates for wildlife and their habitat. Senatore Dec. ¶ 3. Defenders is dedicated to the appreciation and protection of wild animals and plants in their ecological roles within the natural environment. *Id.* at ¶ 4. Defenders supports more than 372,000 active members and nearly 1.2 million members, donors, and online activists, including nearly 39,600 supporters in Texas. *Id.* at ¶ 2. Defenders advocates sound scientifically-based approaches to wildlife conservation that are geared to restoring imperiled species, such as the golden-cheeked warbler, and preventing others from becoming threatened or endangered. *Id.* at ¶ 4.

The Applicants specifically work to protect imperiled species and the ecosystems upon which these species depend, giving them concrete and substantial interests in the specific rule, regulations, and laws at issue here. Marshall Dec. ¶¶ 3, 8–10; Ladd Dec. ¶¶ 3–7; Hargis Dec. ¶¶ 1–3; Stone Dec. ¶ 2; Greenwald Dec. ¶¶ 2–7; Senatore Dec. ¶¶ 4–6. Moreover, the Applicants have worked—and will continue to work—extensively to protect the golden-cheeked warbler

and its habitat in Texas Hill Country. Marshall Dec. ¶¶ 3, 8–10; Ladd Dec. ¶¶ 3–7; Hargis Dec. ¶¶ 1–3; Stone Dec. ¶ 2; Greenwald Dec. ¶¶ 2–7; Senatore Dec. ¶¶ 5, 7–10.

### III.   ARGUMENT

#### A.   Intervention is Proper as a Matter of Right

Rule 24(a) of the Federal Rules of Civil Procedure permits "anyone to intervene who . . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may, as a practical matter, impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest. The Fifth Circuit, in determining whether to grant a motion to intervene, looks to "(1) timeliness, (2) an interest relating to the action, (3) that the interest would be impaired or impeded by the case, and (4) that the interest is not adequately represented by the parties." *In re Lease Oil Antitrust Litigation*, 570 F.3d 244, 247 (5th Cir. 2009). Rule 24 "is to be liberally construed, with doubts resolved in favor of the proposed intervenor." *Entergy Gulf States La. v. U.S. Envtl. Prot. Agency*, 817 F.3d 198, 203 (5th Cir. 2016). "Federal courts should allow intervention when no one would be hurt and the greater justice could be attained." *Wal-Mart Stores, Inc. v. Tex. Alcoholic Bev. Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016) (citing *Sierra Club v. Espy* ("*Espy*"), 18 F.3d 1202, 1205 (5th Cir. 1994) (quotation marks omitted).[1]

#### 1.   Intervention Is Timely

Because the Applicants request leave to intervene during the opening moments of this proceeding, while the case is still in its infancy, and before any dispositive motions have been filed, their motion is timely. Fed. R. Civ. P. 24(a); *see also Stallworth v. Monsanto Co.*, 558 F.2d 257, 267 (5th Cir.1977) (permitting intervention where movants discharged their duty to act

---

[1] The Fifth Circuit holds that intervenors do not need "to independently possess standing where the intervention is into a *subsisting and continuing* Article III case or controversy and the ultimate relief sought by the intervenors is also being sought by at least one subsisting party with standing to do so." *Newby v. Enron Corp.*, 443 F.3d 416, 422 (5th Cir. 2006) (emphasis in original) (internal quotation omitted). Nevertheless, the Applicants' declarations in support of intervention also demonstrate the organizations' standing in this case.

Applicants' Mot. to Intervene
Civil No. 1:17-cv-00538-SS
Page 4

quickly by filing their motion less than one month after district court entered a consent order). Indeed, because the Applicants seek leave to intervene shortly after the case was filed and shortly after learning that their interests in the golden-cheeked warbler are at stake, and because an answer to Plaintiff's complaint has concurrently been filed with this motion, there is no potential for prejudice to the existing parties. *See Wal-Mart*, 834 F.3d at 565–66 ("Because the Association sought intervention before discovery progressed and because it did not seek to delay or reconsider phases of the litigation that had already concluded, the Association's motion was timely.").

For these reasons, and because "no one would be hurt and greater justice would be attained" by allowing Applicants to intervene to protect their interests regarding Plaintiff's claims, the timeliness factor weighs in favor of granting Applicant's motion for intervention. *Espy*, 18 F.3d at 1205–06 (internal quotation omitted).

### 2.   The Applicants Have Legally Protected Interests At Stake

The Applicants have legally protected interests in the status of the golden-cheeked warbler. The Fifth Circuit holds that proposed intervenors must point to an interest that is "direct, substantial, [and] legally protectable," *Ross v. Marshall*, 426 F.3d 745, 757 (5th Cir. 2005). However, to pass the test, "[a]ll that is required … is an interest in the property or other rights that are at issue, provided the other elements of intervention are present." *Diaz v. Southern Drilling Corp.*, 427 F. 2d 1118, 1124 (5th Cir. 1970).

The Applicants' missions are to protect species and the ecosystems upon which they depend, as well as the legal framework that protects them. Marshall Dec. ¶¶ 3, 8–10; Ladd Dec. ¶¶ 3–7; Hargis Dec. ¶¶ 1–3; Stone Dec. ¶ 2; Greenwald Dec. ¶¶ 2–7; Senatore Dec. ¶¶ 3–6. Given their missions, the Applicants' members rely on Applicants to protect their members' aesthetic, spiritual, and recreations interests in the species' native habitat. Marshall Dec. ¶¶ 5–9, 10, 12; Ladd Dec. ¶¶ 2–3, 8–15; Hargis Dec. ¶¶ 2–3; Greenwald Dec. ¶¶ 2, 5–8; Senatore Dec. ¶¶ 5–6; Sexton Dec. ¶ 1. Specifically, the Applicants and their members have worked

extensively to protect the golden-cheeked warbler and its habitat, evidencing a direct interest in the claims being made by Plaintiffs.  Marshall Dec. ¶¶ 3, 8–10; Ladd Dec. ¶¶ 3–7; Hargis Dec. ¶¶ 1–3; Stone Dec. ¶ 2; Greenwald Dec. ¶¶ 2–7; Senatore Dec. ¶¶ 5, 7–11; Sexton Dec. ¶¶ 2–13.  This gives the Applicants a direct and substantial interest in the specific agency action challenged here.

These long-standing interests provide a sufficient basis for intervention in this case. *See, e.g.*, *Idaho Farm Bureau Fed'n. v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) ("A public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it had supported."); *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 526–528 (9th Cir. 1983) (environmental groups' "environmental, conservation and wildlife interests" were sufficient for intervention as a matter of right); *Coalition of Arizona/New Mexico Counties for Stable Economic Growth v. Dep't of the Interior*, 100 F.3d 837, 841–44 (10th Cir. 1996) (individual's involvement with a species through his activities as a photographer, amateur biologist, naturalist, and conservation advocate amounted to sufficient interest for purpose of intervention in litigation covering a species' protection under the ESA).

### 3. This Action Threatens to Impair the Applicants' Interests.

There is no question that the disposition of Plaintiffs' claims has the potential to impair the Applicants' interests in protecting the golden-cheeked warbler.  Courts have repeatedly found an environmental group's interest in a particular species that has been targeted for delisting sufficient to sustain intervention in lawsuits such as this. *See, e.g.*, *Idaho Farm Bureau Fed'n*, 58 F.3d at 1398; *Coalition of Arizona/New Mexico Counties for Stable Economic Growth*, 100 F.3d at 844 (holding that intervenor's interest in the protection of the Mexican spotted-owl would, "as a practical matter," be impaired by a ruling in favor of the plaintiffs to delist the owl); *see also Espy*, 18 F.3d at 1207 (holding that timber trade associations could intervene in lawsuit challenging the legality of certain logging practices because "an adverse resolution of the action would impair their ability to protect their interest" because of "stare decisis effect of the district

court's judgment"). If the golden-cheeked warbler were to be delisted, it would lose the vital protections which have helped ensure the conservation of the specific habitat endemic to Texas upon which the species depends.

Additionally, the fact that the Applicants could participate in any future administrative process regarding the potential delisting of the golden-cheeked warbler is unavailing because this "ignores the legal rights associated with formal intervention, namely the briefing of issues, presentation of evidence, and ability to appeal." *Id.* Regardless, the outcome of this case will likely affect any future administrative process to delist the golden-cheeked warbler and its precedential effect may directly impair the Applicants' ability to protect the golden-cheeked warbler and the protections afforded to it by the ESA. *See, e.g., id.* (noting that because of "the precedential effect of the district court's decision, an adverse resolution of the action would impair their ability to protect their interest"); *see also Edwards v. City of Houston*, 78 F.3d 983, 993 (5th Cir. 1996) ("It is well-settled that one who is not a party to a lawsuit, or has not properly become a party, has no right to appeal a judgment entered in that suit.").

### 4. The Applicants' Interests Are Not Represented By Other Parties.

The existing parties do not adequately represent the Applicants' interests as the existing parties are either directly opposed to the Applicants' interests or may not adequately represent their specific interests in protecting the golden-cheeked warbler. *See, e.g., Heaton v. Monogram Credit Card Bank*, 297 F.3d 416, 425 (5th Cir. 2002) (finding that "[a]n applicant for intervention ... has only a minimal burden as to inadequate representation[,]" and that the government's representation may be inadequate because they have to represent the "public interest" and not a specific, narrow interest).

Plaintiff does not adequately represent the Applicants' interests—to the contrary, Plaintiff's interests are directly opposed to the interests of the Applicants. The Plaintiff seeks to have the golden-cheeked warbler delisted from the ESA, while the Applicants would like to see

increased protections for the golden-cheeked warbler, if its protections under the ESA are changed at all.

Furthermore, while the Federal Defendants may seek to defend the golden-cheek warbler's endangered species status, the Fifth Circuit has frequently recognized that governmental representation of private intervenors may be inadequate. *Freedom Entergy Gulf States Louisiana, L.L.C. v. U.S. E.P.A.*, 817 F.3d 198 (5th Cir. 2016) (permitting intervention because conservation groups' interests sufficiently diverged from EPA's). *Heaton*, 297 F.3d at 425 (finding inadequate representation by government agency because the government represents a broader interest than that of a private entity); *Doe #1 v. Glickman*, 256 F.3d 371, 381 (5th Cir. 2001) (same); *see also Forest Conservation Council v. United States Forest Service*, 66 F.3d 1489, 1498–99 (9th Cir. 1985) (holding that defendant U.S. Forest Service could not be expected to make all the arguments of proposed intervenors).

Given the change in presidential administration, it is also at least questionable whether FWS will vigorously defend against Plaintiff's claims. Currently, all indications suggest the Trump Administration intends to scale back environmental protections. *See, e.g., Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1256 (10th Cir. 2001) ("[I]t is not realistic to assume that the agency's programs will remain static or unaffected by unanticipated policy shifts.") (quoting *Kleissler v. United States Forest Serv.*, 157 F.3d 964, 974 (3d Cir. 1998)). For instance, the Trump administration, through the Office of Management and Budget, has made clear that it intends to limit the issuance of regulations that impose costs, no matter how illusory or hypothetical such costs are. Hartl Dec. ¶¶ 7–8. The fact that dozens of proposed or final determinations either removing or lessening ESA protections for imperiled species are included in the Administration's Unified Agenda is clear evidence that this deregulatory agenda will impact the implementation of the ESA. *Id.*

Regardless, Applicants have a unique and consistent position on the protection of the golden-cheeked warbler. Applicants may raise arguments that the FWS will not, and will ensure

that this Court is presented with a key perspective on the issues involved in this case that may aid the Court's review. The Applicants have particular knowledge and expertise concerning the Endangered Species Act and the golden-cheeked warbler from their decades-long engagement on golden-cheeked warbler issues. Applicants' more targeted briefing will reflect that perspective and experience and will complement the Government's defense. Accordingly, given the "minimal burden," *Heaton*, 297 F.3d at 425, that proposed intervenors must show to demonstrate inadequate representation, the Court should grant the Applicants' motion to intervene as of right as defendants.

### B. In the Alternative, Permissive Intervention Is Warranted

Should this Court find that Applicants are not entitled to intervene as of right under Rule 24(a), they ask this Court to grant permission to intervene pursuant to Federal Rule of Civil Procedure 24(b), which is left to the sound discretion of the district court. Fed. R. Civ. P. 24(b)(1), (3); *Edwards*, 78 F.3d at 999. Under Rule 24(b), this Court may allow anyone to intervene, upon timely motion, if they have a "claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).

As discussed above in the context of intervention as of right, the intervention application is timely and will not delay the proceedings; therefore the Plaintiff will not be prejudiced by Applicants' intervention in this early phase of the proceeding. Additionally, the Applicants' defenses clearly share a common question of law and fact as they seek to uphold the very rule Plaintiff challenges. Therefore, permissive intervention is warranted.

//
//
//
//
//
//

## IV. CONCLUSION

For the foregoing reasons, the Applicants should be allowed to intervene in this matter in order to protect their interests in ensuring that the golden-cheeked warbler remains protected under the ESA.

Dated: July 31, 2017

Respectfully submitted,

/s/ David Frederick
David Frederick
(State Bar No. 07412300)
FREDERICK, PERALES, ALLMON & ROCKWELL, P.C.
1206 San Antonio
Austin, Texas 78701
Telephone: (512) 469-6000
Facsimile: (512) 482-9346

Ryan Shannon (*Pro Hac Vice* Applicant)
(Oregon Bar No. 155537)
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 11374
Portland, OR 97211-0374
Phone: (214) 476-8755
Email: rshannon@biologicaldiversity.org

Jason C. Rylander (*Pro Hac Vice* Applicant)
(Virginia Bar No. 45827)
DEFENDERS OF WILDLIFE
1130 17th Street, N.W.
Washington, D.C. 20036
Telephone: (202) 682-9400
Facsimile: (202) 682-1331
Email: jrylander@defenders.org

CERTIFICATE OF SERVICE

I certify that on this day, August 1, 2017, a true and correct copy of the foregoing "Travis Audubon Society's, Texas Ornithological Society's, Center for Biological Diversity's, and Defenders of Wildlife's Motion to Intervene as Defendants" and a proposed order granting the same was served on the following party counsel by first-class, postage-prepaid U.S. mail.

_____
David Frederick

Mr. Theodore Hadzi-Antich
Texas Public Policy Foundation
901 Congress Avenue
Austin, TX 78701
512-472-2700
Fax: 512-472-2728
Email: tha@texaspolicy.com
*LEAD ATTORNEY*

Mr. Robert E Henneke
Texas Public Policy Foundation
901 Congress Avenue
Austin, TX 78701
512-472-2700
Fax: 512-472-2728
Email: rhenneke@texaspolicy.com

Counsel for the General Land Office
of the State of Texas