IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION



GENERAL LAND OFFICE OF THE STATE OF
TEXAS,

**Plaintiff,**

-vs-                                                    **Case No.  A-17-CA-538-SS**

UNITED STATES FISH AND WILDLIFE
SERVICE, UNITED STATES DEPARTMENT OF
THE INTERIOR, RYAN ZINKE in his official
capacity as Secretary for the United States of the
Interior, GREG SHEEHAN in his official capacity
as Acting Director of the U.S. Fish and Wildlife
Service, and Amy Lueders in her official capacity
as Southwest Regional Director U.S. Fish and
Wildlife Service,

**Defendants.**

<u>**O R D E R**</u>

BE IT REMEMBERED on the 16th day of November 2017, the Court held a hearing in the

above-styled cause,[1] and the parties appeared through counsel. Pending before the Court are Movants

Travis Audubon Society, Texas Ornithological Society, Center for Biological Diversity, and

Defenders of Wildlife (collectively, Movants)' Motion to Intervene [#6]; Defendants United States

Fish and Wildlife Service, United States Department of the Interior, Ryan Zinke in his official

capacity as Secretary for the United States Department of the Interior, Greg Sheehan in his official

capacity as Acting Director of the United States Fish and Wildlife Service, and Amy Lueders in her

official capacity as the Southwest Regional Director of the United States Fish and Wildlife Service

---

[1] IT IS ORDERED that the Clerk of the Court and the parties are instructed to use the style reflected in this
order in all future filings.

(collectively, Defendants)' Response [#13] in opposition; and Plaintiff General Land Office of the State of Texas (TXGLO)'s Response [#14] in opposition as well as Defendants' Motion to Partially Dismiss Second Amended Complaint [#41], TXGLO's Response [#43] in opposition, and Defendants' Reply [#45] in support. Having reviewed the documents, the arguments of counsel, the relevant law, and the file as a whole, the Court now enters the following opinion and orders.[2]

Meet the Golden-Cheeked Warbler (Warbler). The Warbler is a small, migratory songbird breeding exclusively in Texas and known for its yellow checks, which are especially bright in males.[3] Although petite in size, the Warbler is perched at the center of a weighty dispute fraught with tension between land rights and environmental conservation as well as between state and federal power. TXGLO, a state agency charged with maximizing the revenue derived from Texas public lands, asks the Court to enjoin Defendants–all federal actors–from maintaining the Warbler's status as an endangered species under the Endangered Species Act (ESA), 16 U.S.C. § 1531, *et seq*. Fortunately, the Court need not resolve the question of the Warbler's endangered status today. Instead, to conserve the resources of both the parties and of the Court, the Court identifies and streamlines the issues for migration to trial.

---

[2] Also pending before the Court are Defendants' Motion to Dismiss [#31] the original complaint and Defendants' Motion to Partially Dismiss the Amended Complaint [#34]. Because TXGLO filed a second amended complaint, the prior motions to dismiss are moot as confirmed by the parties at the hearing.

[3] Although non-ornithologists may be unfamiliar with the Warbler, the current case is not this Court's first sighting of the bird. *See F.D.I.C. v. Schwarzer*, 812 F. Supp. 700, 702 & n. 4 (W.D. Tex. 1992); *see also Aquifer Guardians in Urban Areas v. U.S. Fish & Wildlife Serv.*, 555 F. Supp. 2d 740 (W.D. Tex. 2008).

## Background

### I.    Endangered Classification

On May 4, 1990, the United States Fish and Wildlife Service (the Service) published a proposed rule to list the Warbler as an endangered species. Proposed Rule to List the Golden-cheeked Warbler as Endangered, 55 Fed. Reg. 18,717, 18,846 (May 4, 1990) (to be codified at 50 C.F.R. § 17.11(h)) (Proposed Rule).[4] As part of the Proposed Rule, the Service concluded the Warbler's critical habitat was "not presently determinable." *Id.* at 18,848.

Following a period for public comment, the final rule listing the Warbler as endangered was published on December 27, 1990.[5] Final Rule to List the Golden-cheeked Warbler as Endangered, 55 Fed. Reg. 53,135, 53,153–60 (Dec. 27, 1990) (codified at 50 C.F.R. § 17.11(h)) (Final Rule). Although the Final Rule listed multiple areas where Warbler habitat was threatened, the Service stated it found "designation of critical habitat is not presently determinable for this species." *Id.* at 53, 157–59. Specifically, the Service explained the minimum size of habitat necessary to support a viable subpopulation of the Warbler was unknown and under study. *Id.* at 53,159. The Service also noted it "must designate critical habitat within two years of the publication date of the original proposed rule (May 4, 1990), unless it determines designation is not prudent." *Id.* To date, critical habitat for the Warbler has not been designated.

---

[4] Concurrently with the proposed rule, the Service issued an emergency rule listing the Warbler as endangered for only 240 days unless the normal listing procedure was completed before that time. Proposed Rule at 18,847.

[5] When the Service lists a species as endangered, the ESA requires the Secretary of Interior to concurrently designate the species's critical habitat "to the maximum extent prudent and determinable." 16 U.S.C. § 1533(a)(3)(A). Additionally, every five years after a species is listed as endangered, the ESA mandates the Secretary of Interior conduct a status review of the species's listing to determine whether a change in the listing status is warranted. *Id.* § 1533(c)(2).

In 2014, the Service completed a five-year status review of the Warbler's classification as endangered. The review concluded urbanization and habitat fragmentation "likely resulted in increased rates of predation of Warbler nests by a wide variety of animal predators, especially rat snakes." Second Am. Compl. [#40] ¶ 56. As a result of the five-year review, the Service concluded the Warbler should remain listed as an endangered species. *See id.*; Mot. Dismiss Second Am. Compl. [#41] at 7–8.

## II.     2015 Petition to Delist

On June 29, 2015, a group of petitioners submitted a petition to the Service to delist the Warbler from the endangered species list. Second Am. Compl. [#40] ¶ 49; *see also* First Am. Compl. [#33-3] Ex. 3 (Petition to Delist).[6] The petitioners included Texans for Positive Economic Policy, Susan Combs, the Texas Public Policy Foundation, and the Reason Foundation. *Id.* Primarily relying on a 2015 study conducted by Texas A&M University Institute of Renewable Natural Resources (Texas A&M Study), the Petition to Delist provided evidence the Warbler was no longer endangered or threatened. *See* Second Am. Compl. [#40] ¶¶ 50–53; Petition to Delist. The Texas A&M Study concluded there were approximately nineteen times more Warblers and five times more Warbler habitat than when the Warbler was first listed as endangered in 1990. *Id.* ¶ 51.

Nevertheless, on May 25, 2016, the Service issued a ninety-day finding denying the Petition to Delist.[7] Second Am. Compl. [#40] ¶ 54; First Am. Compl. [#33-4] Ex. 4 (Ninety-Day Finding).

---

[6] TXGLO attached no exhibits to its second amended complaint. Therefore, where the exhibits cited by the second amended complaint appear to be the same as the exhibits attached to the first amended complaint, the Court looks to prior complaint's exhibits.

[7] The delay in responding to the Petition to Delist seems to be due, at least in part, to the fact petitioners supplemented the Petition with additional published studies and an unpublished report on December 11, 2015. *See* Ninety-Day Finding at 1.

Specifically, the ninety-day finding noted "threats of habitat loss and habitat fragmentation are ongoing and expected to impact the continued existence of the warbler for the foreseeable future." Ninety-Day Finding at 11. Determining the Petition to Delist did "not present substantial information not previously addressed in the 2014 5-year review," the Service concluded the Warbler "has not been recovered, and due to ongoing wide-spread destruction of its habitat, the species continues to be in danger of extinction . . . ." *Id.*

### III.    Current Lawsuit

On June 5, 2017, TXGLO filed this lawsuit. TXGLO's operative complaint asserts three claims: (1) Defendants violated the ESA and its implementing regulations by listing the Warbler as an endangered species without concurrently designating its critical habitat; (2) Defendants improperly denied the Petition to Delist by failing to consider new and substantial scientific data in declining to delist the Warbler while continuing to refuse to designate critical habitat without sufficient justification; (3) Defendants violated the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321, *et seq.*, by failing to prepare an Environmental Assessment (EA) or a Environmental Impact Statement (EIS) in listing the Warbler as endangered, as part of the subsequent five-year reviews, or in connection with the Ninety-Day Finding.

## Analysis

The Court first addresses the motion to intervene and subsequently examines the motion for partial dismissal.

## I.      Motion to Intervene

## A.      Legal Standard

Federal Rule of Civil Procedure 24 provides two avenues to intervene in an action: intervention of right and permissive intervention. A nonparty may intervene as of right if a federal statute gives it an unconditional right to do so. FED. R. CIV. P. 24(a) Absent a statutory right, however, a movant must satisfy four requirements in order to intervene as of right under Rule 24(a): (1) the motion to intervene must be timely; (2) the movant must demonstrate an interest that is related to the property or transaction forming the basis of the action in which it seeks to intervene; (3) the disposition of the main action must impair or impede the movant's ability to protect its interest; and (4) the existing parties must not adequately represent the movant's interest. *Saldano v. Roach*, 363 F.3d 545, 551 (5th Cir. 2004). "Failure to satisfy any one requirement precludes intervention of right." *Haspel & Davis Milling & Planting Co. Ltd. v. Bd. of Levee Comm'rs*, 493 F.3d 570, 578 (5th Cir. 2007).

Where a movant does not meet the requirements for intervention of right, a court may still allow permissive intervention if a federal statute provides the individual with a conditional right to intervene or if it "has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b). The Court must consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties in exercising its discretion. *Taylor Commc'ns Grp., Inc. v. Sw. Bell Tel. Co.*, 172 F.3d 385, 389 (5th Cir. 1999). A district court's

-6-

decision to deny permissive intervention will be overturned only in extraordinary circumstances where the court has abused its discretion. *Trans Chem. Ltd. v. China Nat'l Mach. Imp. & Exp. Corp.*, 332 F.3d 815, 825 (5th Cir. 2003).

**B.      Application**

Movants seek to participate in this lawsuit, arguing they and their members have an interest in protecting the Warbler and ensuring the protections of the ESA are fully defended and upheld. Mot. Intervene [#6] at 3. All four of the Movants are non-profit organizations promoting conservation of, advocacy for, and appreciation of wildlife. *Id.* at 4–5.

Both TXGLO and Defendants oppose permitting Movants to intervene as of right, arguing Movants do not satisfy the requirements to do so. Specifically, while the parties do not dispute Movants timely filed a motion to intervene or Movants have an interest in the subject matter of the litigation, both parties argue Movants' interest will be adequately represented by Defendants.

The burden of establishing inadequate representation is on the applicant for intervention. *Haspel*, 493 F.3d at 578 (citation omitted). This burden is "minimal" and "is satisfied if the applicant shows representation of his interest may be inadequate" *Id.* (citation and internal quotations omitted). But "when the party seeking to intervene has the same ultimate objective as a party to the suit, the existing party is presumed to adequately represent the party seeking to intervene unless that party demonstrates adversity of interest, collusion, or nonfeasance." *Id.* at 578–79 (quoting *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1288 (5th Cir. 1987) (internal quotation marks omitted)).

Here, the Court finds the Movants' ultimate objective is the same as Defendants': to maintain the Warbler on the ESA's endangered species list. Both Defendants and Movants seek to defend the

Service's denial of the Petition to Delist. Thus, the Court presumes Defendants adequately represent Movants unless the Movants demonstrate adversity of interest, collusion, or nonfeasance. *See Haspel*, 493 F.3d at 578–79.

Movants argue Defendants' representation may be inadequate because of the change in presidential administration from President Obama to President Trump. Mot. Intervene [#6] at 10–11; *see also* Reply Mot. Intervene [#29] at 4–5 (contending Defendants may be less vigorous in their defense of the current listing of the Warbler as endangered than Movants). According to Movants, the Trump administration "intends to limit the issuance of regulations that impose costs" and has set a "deregulatory agenda [that] will impact the implementation of the ESA." *Id.*

But at this time, Movants offer nothing more than speculation. Thus, without more, the Court does not find Movants have demonstrated the existing parties to this suit do not adequately represent the Movants' interest. Consequently, the Court denies Movants' motion to intervene as of right.

Alternatively, Movants ask the Court to grant permissive intervention. While TXGLO also opposes permissive intervention, Defendants take no position regarding Movants' request for permissive intervention. As permissive intervention falls under the discretion of the court, this Court declines to authorize permissive intervention at this time. Permitting Movants to intervene as a party in the lawsuit would result in duplication and delay of the case's resolution. Instead, Movants can sufficiently protect their interest by filing an amicus brief of no more than twenty-pages if necessary.

Finally, as the Court announced at the hearing, if Movants find Defendants are not adequately representing Movants' interest in this litigation, then Movants may file an amended motion to intervene.

II.     **Motion to Dismiss**

A.      **Legal Standard**

      **i. Rule 12(b)(1)**

      A motion under Rule 12(b)(1) asks a court to dismiss a complaint for lack of subject matter

jurisdiction. FED. R. CIV. P. 12(b)(1). "A case is properly dismissed for lack of subject matter

jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home*

*Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal

quotation marks omitted). A jurisdictional attack under Rule 12(b)(1) should be considered before

addressing other challenges to the claims on the merits. *See Ramming v. United States*, 281 F.3d 158,

161 (5th Cir. 2001).

      **ii. Rule 12(b)(6)**

      Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain

statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A

motion under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a complaint for

"failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a

motion to dismiss, the plaintiff must plead sufficient facts to state a claim for relief that is facially

plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566

U.S. at 678. Although a plaintiff's factual allegations need not establish that the defendant is

probably liable, they must establish more than a "sheer possibility" a defendant has acted unlawfully.

*Id.* Determining plausibility is a "context-specific task," and must be performed in light of a court's "judicial experience and common sense." *Id.* at 679.

In deciding a motion to dismiss under Rule 12(b)(6), a court generally accepts as true all factual allegations contained within the complaint. *Leatherman v. Tarrant Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). In deciding a motion to dismiss, courts "must consider" the complaint, as well as other sources such as documents incorporated into the complaint by reference and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

**B.     Application**

Defendants move to partially dismiss TXGLO's second amended complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). First, Defendants argue sovereign immunity bars Plaintiff from challenging the 1990 listing of the Warbler as endangered, the 1990 failure to designate critical habitat, and the 1990 failure to issue an EIS or EA. Second, Defendants contend TXGLO fails to state a plausible claim under NEPA. According to Defendants, only TXGLO's second claim for relief—Defendants failed to remove the Warbler from the endangered species list in contradiction of scientific data while continuing to refuse to designate critical habitat—survives dismissal. Although the Court indicated it was inclined to overrule Defendants' motion for partial dismissal in the November 16th hearing, the Court fully examines Defendants' grounds for partial dismissal below and finds them valid.

### i. Sovereign Immunity & Statute of Limitations

First, Defendants argue TXGLO's challenges to the Service's actions in 1990 should be dismissed for lack of subject matter jurisdiction because sovereign immunity precludes judicial review of a time-barred action. Specifically, Defendants allege the general six-year statute of limitations for suit against the United States began to run December 27, 1990, the date the Final Rule listing the Warbler as endangered was published, and therefore expired long ago. The Court agrees the statute of limitations has run and sovereign immunity precludes this court from exercising jurisdiction over the time-barred claims.

Congress explicitly waived immunity from suit for claims brought against the United States "within six years after the right of action first accrues." 28 U.S.C. § 2401(a). After the six-year window expires, sovereign immunity deprives the Court of subject matter jurisdiction. *See United States v. Kubrick*, 444 U.S. 111, 117 (1979) (explaining how the failure to sue the United States within the limitations period deprives federal courts of jurisdiction). TXGLO cannot bring claims disputing the validity of classifying the Warbler as endangered over twenty-five years after Service published its Final Rule.

Attempting to circumvent the statute of limitations, TXGLO argues the failure to designate the Warbler's critical habitat when the Service listed the Warbler as endangered is a failure to fulfill a non-discretionary duty. Resp. Mot. Dismiss [#43] at 4–10. TXGLO alleges such a failure is a continuing violation for which the statute of limitations has not expired. *Id.* However, TXGLO does not seek to compel Defendants to act or to force Secretary of Interior to designate the Warbler's critical habitat. *See* Second Am. Compl. [#40] ¶¶ 77–80.[8] As a result, this case is unlike cases where

---

[8] When questioned on this issue in the hearing, TXGLO expressly represented it was not requesting Defendants designate critical habitat for the Warbler.

courts have found suits to compel agency performance to allege a continuing violation, which plaintiffs may challenge at any time provided the delay continues. *See Schoeffler v. Kempthorne*, 493 F. Supp. 2d 805, 822 (W.D. La. 2007) (holding the plaintiffs' effort to compel the Secretary of Interior to designate critical habitat under the ESA alleged a continuing violation and was not time-barred by the six[-]year statute of limitations of 28 U.S.C. § 2401(a)); *Wilderness Soc. v. Norton*, 434 F.3d 584, 588–89 (D.C. Cir. 2006) (emphasizing how the plaintiff's complaint "does not complain about what the agency has done but rather about what the agency has yet to do" in finding plaintiff likely alleged a continuing violation).

Instead, in filing this lawsuit, TXGLO asks the Court to declare the Warbler's endangered species listing invalid because critical habitat was not concurrently designated and an EIS or EA were not completed. *See generally* Second Am. Compl. [#40]. TXGLO effectively challenges the Service's 1990 listing of the Warbler, a discrete event. As TXGLO's right of action to dispute the validity of the Warbler's listing accrued over twenty years ago, the Court finds the statute of limitations has run and sovereign immunity precludes subject matter jurisdiction. The Court therefore dismisses TXGLO's challenges to the Service's 1990 actions, the entirety of TXGLO's first claim for relief and the portion of TXGLO's third claim alleging a failure to comply with NEPA for neglecting to file an EIS or EA with the Warbler's 1990 listing.

**ii. NEPA**

Defendants argue the entirety of TXGLO's third claim, alleging a violation of NEPA, should be dismissed because NEPA does not apply to a listing decision, the five-year review of a listing, and

a negative 90-day finding on a petition to delist.[9] For the reasons described below, the Court finds TXGLO has indeed failed to state a claim under NEPA.

NEPA was enacted to "ensure that federal agencies carefully consider detailed information concerning significant environmental impacts'" while also guaranteeing "relevant information will be made available to the larger audience that may also play a role in both the decisionmaking process and the implementation of that decision." *Sabine River Auth. v. U.S. Dep't of Interior*, 951 F.2d 669, 676 (5th Cir. 1992) (quoting *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989) (internal quotation marks omitted)). In effect, NEPA is "a procedural statute," demanding the "decision to go forward with a federal project which significantly affects the environment be an environmentally conscious one." *Id.*

In light of NEPA's purpose, the legislation requires federal agencies to produce an EIS for "every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment . . . ." 42 U.S.C. § 4332(C). "An EIS is not required for *non* major action or a major action which does not have significant impact on the environment." *Sabine River Auth.*, 951 F.2d at 677 (quotation and internal quotation marks omitted) (emphasis in original).

To assist federal agencies in resolving whether they must prepare an EIS, the federal Council on Environmental Quality (CEQ) has issued regulations. *Id.* "These regulations are entitled to substantial deference and are binding on federal agencies." *Id.* (internal quotation marks and citations omitted). Rather than requiring a full EIS, the CEQ regulations permit federal agencies to make a

---

[9] Although the Court concludes above sovereign immunity prevents the Court from exercising jurisdiction over TXGLO's claim the 1990 listing of the Warbler as endangered violated NEPA, the Court nevertheless examines whether TXGLO failed to state a claim under NEPA with respect to the listing decision as an alternative grounds for dismissal.

preliminary EA to determine whether the environmental effects of a proposed action are significant and thus necessitate an EIS. *Id.* (citing 40 C.F.R. §§ 1501.3, 1501.4, 1508.9, 1508.13, 1508.27 (1984)). Where an agency's EA finds an action will have no significant impact, no EIS is necessary. *Id.*

TXGLO alleges Defendants violated NEPA by failing to prepare an EIS or an EA in listing the Warbler as endangered, in connection with the 2014 review, and with its denial of the ninety-day petition. Second Am. Compl. [#40] ¶ 86. However, NEPA only applies when there is a change affecting the environment. *See City of Dallas, Tex. v. Hall*, 562 F.3d 712, 723 (5th Cir. 2009) (holding that an EIS was not required when the federal action "[did] not effect a change in the use or character of land or in the physical environment"); *Sabine River Auth.*, 951 F.2d at 679 ("An EIS is not required . . . when the proposed federal action will effect no change in the status quo.") (citation and internal quotation marks omitted). TXGLO offers no indication the decision to list the Warbler as endangered and maintain that listing resulted in a change to the environment. If anything, the decision to maintain the Warbler's endangered species listing is a decision to preserve the status quo, which "does not amount to a 'major Federal action significantly affecting the quality of the human environment." *See Sabine River Auth.*, 951 F.2d at 679 (quoting 42 U.S.C. § 4332 (2)(C) (alternation omitted)).[10]

Furthermore, TXGLO points to no authority indicating the Service must comply with the NEPA when listing a species as endangered or retaining that listing. Second Am. Compl. [#40] ¶¶

---

[10] Since 1983, the Service has not completed an EIS or an EA in conjunction with listing decisions. *See* Endangered and Threatened Wildlife and Plants; Preparation of Environmental Assessments for Listing Actions Under the Endangered Species Act, 48 Fed. Reg. 49,244-02, 49,244 (Oct. 25, 1983) (codified at 50 C.F.R. Part 17). In announcing this policy, the Service relied on CEQ's recommendation that endangered species actions are exempt from NEPA review "as a matter of law." *Id.; see also Pac. Legal Found. v. Andrus*, 657 F.2d 829, 841 (6th Cir. 1981) (holding, as a matter of law, an EIS is not required when listing a species as endangered or threatened).

85–87; Resp. Mot. Dismiss [#43] at 15–19. At most, TXGLO cites persuasive authority holding the Secretary of Interior must comply with NEPA when designating critical habitat under the ESA. Resp. Mot. Dismiss [#43] at 16 (citing *Catron Cty. Bd. of Comm'rs, N.M. v. U.S. Fish & Wildlife Serv.*, 75 F.3d 1429, 1435–36 (10th Cir. 1996)). However, the Fifth Circuit, binding on this Court, held NEPA compliance is not required when the Service designates critical habitat. *Markle Interests, L.L.C. v. U.S. Fish & Wildlife Serv.*, 827 F.3d 452, 479 (5th Cir. 2016), *petition for cert. filed* (July 14, 2017) (No.17-74 ).

Simply put, because listing a species as endangered and maintaining that listing does not result in a change to the physical environment, Defendants' actions do not trigger NEPA's impact statement requirement. *See id.* (concluding the designation of critical habitat did not effect changes to the physical environment and thus the Service was not required to complete an EIS). Therefore, the Court finds TXGLO has failed to state a claim under NEPA and the third claim must be dismissed.

### Conclusion

In sum, the Court denies Movants' motion to intervene without prejudice to refiling. Nevertheless, Movants may file an amicus brief where necessary to advise the Court of additional information or arguments. If Movants find Defendants are not adequately representing Movants' interest in this litigation, Movants may file an amended motion to intervene at that time. In addition, the Court grants Defendants' motion for partial dismissal and dismisses TXGLO's first and third claims for relief. Only TXGLO's second claim for relief—Defendants failed to remove the Warbler from the endangered species list in contradiction of scientific data presented in the Petition to Delist while continuing to refuse to designate critical habitat—remains.

Accordingly,

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss [#31] and Defendants' Motion to Partially Dismiss Amended Complaint [#34] are DISMISSED as moot;

IT IS FURTHER ORDERED that Movants Travis Audubon Society, Texas Ornithological Society, Center for Biological Diversity, and Defenders of Wildlife's Motion to Intervene [#6] is DENIED without prejudice to refiling;

IT IS FINALLY ORDERED that Defendants' Motion to Partially Dismiss Second Amended Complaint [#41] is GRANTED;

SIGNED this the 30ᵗᵉ day of November 2017.

_Bamsparks_

SAM SPARKS
UNITED STATES DISTRICT JUDGE

-16-