UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| GENERAL LAND OFFICE OF THE STATE OF TEXAS, )<br>)<br>*Plaintiff*, )<br>)<br>v. )<br>)<br>UNITED STATES FISH AND WILDLIFE SERVICE, et al., )<br>)<br>*Defendants*. ) | No. A-17-CA-00538-SS |

# FEDERAL DEFENDANTS' REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT

The 2015 petition ("Petition") to remove the golden-cheeked warbler ("Warbler") from the endangered species list failed to provide substantial information that delisting the Warbler may be warranted. Reviewing the Petition and its own files, the U.S. Fish and Wildlife Service ("the Service") concluded that a reasonable person would find that the Warbler remains in danger of extinction due to serious threats from habitat loss and fragmentation, predation, inadequate regulatory mechanisms, and other natural and manmade factors. Therefore, the 90-day Finding was consistent with law and not arbitrary or capricious.

## ARGUMENT

**I.    The Service Applied the Appropriate Standard for Reviewing the Petition.**

   **A.    The Service followed the 90-day finding standard.**

The Service explicitly and consistently applied the correct standard in its 90-day Finding by evaluating whether the Petition "presents substantial scientific or commercial information indicating that the petitioned action may be warranted." AR 440; 16 U.S.C. § 1533(b)(3)(A). The Service also correctly defined "substantial information" as "that amount of information that would lead a reasonable person to believe that the measure proposed in the petition may be warranted." AR 440 (quoting 50 C.F.R. § 424.14(b) (2016)). Although the "substantial information" standard is less demanding than the standard applied at the 12-month finding stage, 90-day findings still serve a meaningful gate-keeping function to preserve agency resources. *See Ctr. for Biological Diversity v. Morgenweck*, 351 F. Supp. 2d 1137, 1143 (D. Colo. 2004) ("The ESA simply does not endorse [the] rubber-stamping of petitions."). To meet this standard, the petitioner had the burden of presenting evidence that ongoing threats to the Warbler's persistence, such as habitat loss and fragmentation, when viewed cumulatively with other threats, are minimal enough that a reasonable person would believe delisting the Warbler may be warranted. *See* 16 U.S.C. § 1533(b)(3)(A).

The 90-day Finding reasonably concluded that the Petition did not meet this standard.

The 90-day Finding was not equivalent to a 12-month finding, in which the Service surveys the best available scientific information to determine if the petitioned action is warranted. 16 U.S.C. § 1533(b)(3)(B). Unlike many cases cited by Plaintiff, the 90-day Finding focused solely on the information in the Petition or available in the Service's files due to its previous reviews and decisions on the Warbler's status, including the recent five-year review. *See Colo. River Cutthroat Trout v. Kempthorne*, 448 F. Supp. 2d 170, 176-77 (D.D.C. 2006) (Service may not solicit outside information to evaluate a petition); *Morgenweck*, 351 F. Supp. 2d at 1143. Nor did the Service apply an improperly heightened standard or require "conclusive" evidence. *See Ctr. for Biological Diversity v. Kempthorne*, No. C 06-04186 WHA, 2007 WL 163244, at *3-*4 (N.D. Cal. Jan. 19, 2007) (Service erred by explicitly requiring petition to show a "strong likelihood" that listing may be warranted); *Morgenweck*, 351 F. Supp. 2d at 1140 (Service required listing petition to provide "conclusive evidence that the [species] faced a high probability of extinction").

Plaintiff's alleged examples of the Service applying the wrong standard are unconvincing. *See* ECF No. 76 ("Pl.'s Resp.") at 9. First, although the Service noted that the modeling studies relied upon in the Petition may overestimate Warbler populations, it went on to credit those modeling studies. *See* AR 442-43; *infra* Section II(A). Second, when the Service said the Petition's claims regarding predation and disease were "refuted by the 2014 5-year review," it was referencing information in the five-year review that the Petition did not address or call into question. AR 444-45. The Petition's conclusory allegations regarding predation were not supported by the cited scientific evidence, whereas the five-year review contained substantial scientific evidence that fragmentation could exacerbate predation of the Warbler. *See infra* Section II(B); *Morgenweck*, 351 F. Supp. 2d at 1142 (the Service need not "blindly accept . . . unsupported

conclusions of petitioners" and may "rely on what is within its own expertise and records to reject petitions"). Third, the Service's statement that "*the research cited in the petition does not allow us* to conclude that oak wilt, wildfire, vegetation management, and patch size are not threats to the species" is not evidence of a heightened standard. AR 447 (emphasis added). Indeed, the Service properly evaluated whether the petition presented information that would "allow" a reasonable person to conclude that the threats were not significant so that delisting may be warranted.

Plaintiff also argues that *any* scientific uncertainty regarding the magnitude of any threat to a species mandates a full status review. This is not accurate. A full status review is only required when there is uncertainty regarding information presented in the petition that, if resolved in favor of the petitioner, would be substantial enough to possibly warrant delisting. *See* 16 U.S.C. § 1533(b)(3)(A). Here, the Service recognized that there was "some uncertainty" regarding the magnitude of "effects of oak wilt . . . , wildfire, vegetation management, road and construction noise, and patch size on warbler reproductive success," but there was no uncertainty regarding whether those threats *existed* or over the significant habitat threats addressed under Factor A. AR 447; *see infra* Sections II(D). Putting forth a scintilla of evidence that demonstrates minor uncertainty regarding some threats the Warbler faces is not sufficient to carry the petitioner's burden of providing "substantial evidence" that, based on all five statutory factors, delisting the Warbler may be warranted. *See Palouse Prairie Found. v. Salazar*, 383 F. App'x 669, 670 (9th Cir. 2010) (when the evidence in a petition is "limited and inconclusive," and does not indicate the action may be warranted, a negative 90-day finding is proper).

Finally, Plaintiff wrongly claims that the deference owed to all agency determinations under the Administrative Procedure Act ("APA") does not apply to 90-day findings. Pl.'s Resp. at 8. The case law, including the very cases cited by Plaintiff, makes clear that the Service is

3

entitled to deference for its exercise of scientific judgment in evaluating whether a petition presents substantial information that delisting may be warranted. *See Markle Interests, LLC v. U.S. Fish & Wildlife Serv.*, 827 F.3d 452, 459-60 (5th Cir. 2016) (the Service's administration of the ESA is reviewed under the highly deferential APA standard), *cert. granted sub nom., Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 138 S. Ct. 924 (2018); *Moden v. U.S. Fish & Wildlife Serv.*, 281 F. Supp. 2d 1193, 1204 (D. Or. 2003) ("[The Service's] conclusion that the petition does not contain substantial scientific or commercial information is entitled to deference, and this court will not substitute its judgment for that of the [agency]."); *see also Humane Soc'y of the U.S. v. Pritzker*, 75 F. Supp. 3d 1, 14 (D.D.C. 2014); *Colo. River Cutthroat Trout*, 448 F. Supp. 2d at 174-75. If the Service's reasons and decision "satisfy minimum standards of rationality," they must be upheld, even where the Court would reach a different conclusion. *Markle*, 827 F.3d at 460.

### B. The Service's finding that the Petition presented no "new information" was consistent with applicable regulations.

The 90-day Finding states that "[n]o new information is presented [in the Petition] that would suggest that the species was originally listed due to an error in information." AR 460; *see also* AR 449. Amicus American Stewards of Liberty ("ASL") suggests that the Service's use of the phrase "new information" means that it erroneously applied the updated regulations for evaluating listing petitions passed in 2016, after the 90-day Finding was issued. ECF No. 72 at 4. However, the Service's reference to no "new information" was fully consistent with the ESA and regulations in place prior to the revisions. The Service appropriately considered whether the Petition presented information that the Warbler's original listing was in error—in other words, "new information" available after the 1990 listing—because that is one basis upon which the Service may delist a species. *See* 50 C.F.R. § 424.11(d)(3) ("A species may be delisted" when "[s]ubsequent investigations may show that the best scientific or commercial data available when

4

the species was listed, or the interpretation of such data, were in error.").

The Service also mentioned that some information presented in the Petition had been thoroughly analyzed in the recent five-year review. AR 441, 445. But Courts have long accepted that the Service may consider information in its own files when evaluating a petition. *See* ECF 64 at 22; *Morgenweck*, 351 F. Supp. 2d at 1142; *Wildearth Guardians v. U.S. Sec'y of the Interior*, No. 4:08-CV-00508-EJL-LM, 2011 WL 1225547, at *6 (D. Idaho Mar. 28, 2011) (considering whether a change in the species' range raised in a petition had occurred after a previously issued 12-month finding).[1] The Service applied the correct standard based on then-current regulations.

## II.   The Service Reasonably Concluded that the Petition Did Not Present Substantial Information that Delisting May Be Warranted.

### A.   Factor A - Habitat Threats

Plaintiff's response brief hardly mentions the most critical statutory factor justifying the listing of the Warbler: the present and threatened destruction, modification, and curtailment of the species' habitat. *See* 16 U.S.C. § 1533(a)(1). The Petition, too, did not dispute that (1) the Warbler's survival depends upon the persistence of mature Ashe juniper-oak woodlands in central Texas, (2) habitat loss threatens the Warbler, and (3) habitat fragmentation negatively affects the species. *See* ECF No. 67 ("Defs.' Br.") at 17-19; AR 8, 29-30. The publically available five-year review presented abundant evidence that habitat loss and fragmentation are major threats to the Warbler, placing the species in danger of extinction throughout all of its range. *See* AR 443, 6782-6783. The Petition did not provide any information casting doubt on these significant threats and

---

[1] This is also consistent with the Service's own guidance. Service Guidance on Making 90-Day Petition Findings Under Section 4(b)(3)(A) of the ESA at 1, *available at* https://www.fws.gov/endangered/esa-library/pdf/Appendix%20B_Guidance%20on%20Making %2090-day%20Petition%20Findings.pdf (The Service may "consider information readily available that we are aware of at the time the determination is made that provides context in which to evaluate whether the information that a petition presents is substantial.").

many of the studies cited by the Petition *supported* the Service's determination that habitat loss and fragmentation harm the Warbler and its future prospects. AR 443; *see* AR 29-30 (Petition providing data on habitat loss and acknowledging that increased patch size, i.e., less fragmented habitat, positively influences Warbler occupancy and pairing and fledging success); AR 116 (Petition acknowledging that evidence of some breeding in small patches "does not discount the impact of habitat fragmentation on warbler success"). This is not a situation where the Service credited studies documenting habitat threats over studies reaching the opposite conclusion, because the Petition did not present any studies reaching the opposite conclusion.[2] Here the information in the Service's files and the Petition's admissions *affirming* these habitat threats led the Service to conclude the Petition did not present "substantial" evidence that the Warbler's habitat threats were insignificant. *See* Defs.' Br. at 18-22. On this basis alone, the Service was justified in reaching a negative 90-day finding.

Instead of addressing habitat loss and fragmentation, Plaintiff echoes the Petition itself in relying almost exclusively on the Mathewson et al. (2012) Warbler population and habitat area estimates. *See* Pl.'s Resp. at 12-13. Plaintiff erroneously states that the Service "summarily discount[ed]" Mathewson et al. and related papers by weighing them against other studies. *Id.* In truth, the Service credited these population and habitat estimates as "the most recent and comprehensive efforts to estimate range-wide warbler habitat and population size to date" and "acknowledge[d] that the known potential range is geographically more extensive than when the

---

[2] The Petition did cite information indicating that both small and large patches are important "to sustain the warbler population," and some Warblers successfully breed on relatively small patches. AR 30. The 90-day Finding credited this information and "agree[d] that all patches are important," but reiterated that the studies cited in the Petition and other studies known to the Service showed "larger more connected habitat patches are especially important for supporting a viable warbler population given that occupancy probability increases with patch size." AR 443.

golden-cheeked warbler was originally listed." AR 442.  While the Service noted that some studies have found Mathewson overestimated the population in lower density areas, the Service still credited the study for the purposes of the 90-day Finding.  AR 442; *see also* AR 6779.  But the Service determined that these estimates alone simply do not constitute "substantial information" that delisting may be warranted because "[h]abitat destruction, fragmentation and degradation remain a real and significant threat to the continued existence of the warbler."  AR 442.  In other words, the existence of more Warblers than estimated in 1990 does not change the fact that the Warbler is in danger of extinction if the specific, unique breeding habitat necessary for its survival is substantially reduced or eliminated—a very real threat essentially unrefuted by the Petition.

Plaintiff also incorrectly argues that the Service relied on "the outdated recovery plan to discount new information" in the Petition.  Pl.'s Resp. at 13-14.  The 90-day Finding did not rely on the 1992 Recovery Plan to discount any information; it did not even cite the Recovery Plan. *See* AR 440-54.  On the other hand, the Petition *did* assert that the recovery criteria from the Recovery Plan had been met, AR 115, and Plaintiff argued that the Recovery Plan supported the delisting of the Warbler in its opening brief, *see* ECF 64 at 27-29.  Federal Defendants' brief responded to Plaintiff by pointing out that the Recovery Plan is not the ultimate measure of whether a species should be delisted—the ESA and its implementing regulations provide the delisting standard—but that, even if it were considered, the Petition did not present sufficient evidence that the recovery criteria established in that plan had been met.  Defs.' Br. at 26.[3]

Plaintiff's inaccurate claims continue to paper over the critical fact in this case: the Petition

---

[3] Federal Defendants' brief stated that the 1992 Recovery Plan made an "educated guess" that the delisting criteria would be met by 2008.  Defs.' Br. at 27.  Plaintiff misquotes Federal Defendants repeatedly by suggesting that *everything* in the Recovery Plan, not just this projection of the timing of future recovery, was an "educated guess" and therefore is unreliable.  Pl.'s Resp. at 13-14.

7

did not carry its burden to present substantial information that the major habitat threats facing the Warbler may not threaten the species' persistence. *See* Defs.' Br. at 11. Based on this fact, the Service soundly concluded that a reasonable person would find the information in the Petition was not substantial enough to possibly warrant delisting the Warbler.

### B. Factor C – Disease or Predation

Federal Defendants did not "ignore[] or summarily discount[]" studies cited by the Petition regarding predation, Pl.'s Resp. at 15; to the contrary, Federal Defendants pointed out that the very studies cited in the Petition show that predation *is* a threat to the Warbler. Defs.' Br. at 28-30. The studies cited in the Petition observed that predators killed roughly 15% of nesting females, 22% of eggs, and 24% of nestlings in the studied populations, and that cowbird parasitism alone ranges from 8.3 to 57.6% per year. AR 4483, 5828, 2465. The five-year review, cited in the 90-day Finding, found that predation "threats can be exacerbated by the loss and fragmentation of habitat," AR 6785, and the Petition provided no information casting doubt on this well-documented conclusion.[4] Thus, the Service reasonably determined that the Petition did not present substantial information that the lack of predation may warrant delisting the Warbler.

### C. Factor D – Existing Regulatory Mechanisms

The Petition also failed to present substantial information that the adequacy of existing regulatory mechanisms may justify delisting the Warbler. *See* Defs.' Br. at 30-35. Plaintiff does not dispute that, absent ESA protections, there are no existing laws or regulations that would slow the already rapid destruction and fragmentation of Warbler breeding habitat. *See* Pl.'s Resp. at 15;

---

[4] Plaintiff claims the Service "ignore[d]" Peak and Thompson (2014), *see* Pl.'s Resp. at 15, but the Petition did not cite that study for any point relating to predation. *See* AR 445; Defs.' Br. at 11-12, 21 (the Service is not obligated to assess information not presented in the Petition). Plaintiff also criticizes the Anders (2000) study as outdated and unpublished, Pl.'s Resp. at 15, but it was the Petition itself that relied on Anders, AR 24, not the 90-day Finding.

AR 446 (noting roughly 29% of Warbler breeding season habitat was lost between 1999-2001 and 2010-2011). Plaintiff merely returns to its red herring argument that the five-year review discussed some alleged regulatory mechanisms in its assessment of habitat threats, instead of in the "regulatory mechanisms" section. Pl.'s Resp. at 15. This argument is irrelevant to the Court's assessment of the 90-day Finding. *See* Defs.' Br. at 33-34.

### D.   Factor E - Other Natural or Manmade Factors

Finally, the Petition failed to present substantial information indicating that factors such as oak wilt, fire, habitat management, climate change, and recreation may not be threats to the Warbler. In fact, the Petition did not address *at all* the impacts of climate change, recreation, or habitat management practices (other than thinning understory juniper, which the Service did not identify as a threat to the Warbler). *See* AR 29-31; AR 6786-88 (documenting threats from climate change, increased wildfire, and recreation); ECF No. 73 (Amicus brief thoroughly discussing the Petition's failure to address climate change and fire threats).

Regarding the impacts of fire, the Service did not choose "one study over another." Pl.'s Resp. at 16. The five-year review provided significant scientific evidence that catastrophic wildfires, projected to become more common due to climate change, could destroy Warbler habitat for long periods of time. AR 6787. The Petition cited only one study on fire, Yao et al. (2012), which "suggested fire could have a dual effect on warbler habitat," reducing suitable habitat in the short term but potentially increasing long-term oak recruitment if fires are "properly managed." AR 30-31. Thus, the Petition—at most—presented one study showing both positive and negative effects from certain types of fire. The 90-day Finding credited the Petition's assertion that fires can aid in oak recruitment but, in light of the other information in the Service's files, this did not constitute "substantial information" that fires, especially catastrophic wildfires, do not pose a

threat to the Warbler such that delisting may be warranted.  AR 447.

### III.     The Lack of Designated Critical Habitat Has No Bearing on this Suit.

Plaintiff's response brief, once again, resurrects claims dismissed by this Court as barred by the statute of limitations: attacking the Service's failure to designate critical habitat concurrently with the Warbler's 1990 listing.  Pl.'s Resp. at 17-20; *see* ECF No. 47 at 12.  However, the only claim before this Court challenges the 2016 90-day Finding, and the Service had no obligation or reason to address the lack of designated critical habitat when evaluating the Petition.  *See* 50 C.F.R. § 424.14(b)(1) (2016); *id.* § 424.14(b)(2) (a petition may include suggestions regarding critical habitat but such information "will not be a basis for the determination of the substantiality of a petition").  As already explained, critical habitat has no bearing on this claim because:  (1) the Petition did not argue that the lack of critical habitat supported delisting; (2) a listing determination must be based solely on scientific information regarding the five statutory listing factors; and (3) the lack of critical habitat could reflect many factors and does not undermine the overwhelming evidence of serious habitat threats to the Warbler.  *See* Defs.' Br. at 14-16.  Plaintiff did not respond to *any* of these arguments.  Pl.'s Resp. at 17-20.[5]  For these uncontested reasons, Plaintiff's critical habitat arguments distract from the merits of this case and should be rejected.

### CONCLUSION

For these reasons, Plaintiff's motion for summary judgment should be denied, and Federal Defendants' cross-motion for summary judgment should be granted.

---

[5] Plaintiff's allegation that the Service "continues to assert" that critical habitat is "undeterminable" has no support in the record.  Pl.'s Resp. at 19.  In 1990, the Service stated that critical habitat was "undeterminable at this time."  55 Fed. Reg. 53,153, 53,156 (Dec. 27, 1990).  A few years later, the Service found that designating critical habitat for the Warbler was "neither necessary nor prudent."  AR 25.  Plaintiff points to no recent statement by the Service that critical habitat is *currently* undeterminable.

10

Dated: August 15, 2018					Respectfully submitted,

							JEFFREY H. WOOD
							Acting Assistant Attorney General
							U.S. Department of Justice
							Environment and Natural Resources Division
							SETH M. BARSKY, Section Chief
							MEREDITH L. FLAX, Asst. Section Chief

							*/s/ Devon Lea Flanagan*
							DEVON LEA FLANAGAN
							Trial Attorney
							D.C. Bar No. 1022195
							Wildlife and Marine Resources Section
							Ben Franklin Station
							P. O. Box 7611
							Washington, D.C.  20044-7611
							(202) 305-0201 (tel.)
							(202) 305-0275 (fax)
							devon.flanagan@usdoj.gov

							CHARLES K. COOPER
							Assistant United States Attorney
							Texas Bar No. 24074070
							816 Congress Avenue, Suite 1000
							Austin, Texas 78701
							(512) 916-5858 (phone)
							(512) 916-5854 (fax)
							charlie.cooper@usdoj.gov

							*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2018, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Western District of Texas by using the CM/ECF system, which will serve a copy of the same on the counsel of record.

*/s/ Devon Lea Flanagan*
DEVON LEA FLANAGAN
Trial Attorney
D.C. Bar No. 1022195
Wildlife and Marine Resources Section
Ben Franklin Station
P. O. Box 7611
Washington, D.C. 20044-7611
(202) 305-0201 (tel.)
(202) 305-0275 (fax)
devon.flanagan@usdoj.gov

*Attorney for Defendants*