**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| GENERAL LAND OFFICE<br>OF THE STATE OF TEXAS,<br><br>        Plaintiff,<br><br>v.<br><br>UNITED STATES FISH AND WILDLIFE<br>SERVICE, et al.,<br><br>        Defendants. | No. A-17-CA-00538-SS |

**PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

Plaintiff General Land Office of the State of Texas ("GLO"), pursuant to 16 U.S.C. § 1540(g)(4) and Fed. R. Civ. P. 54(d)(2), hereby moves for an award of attorneys' fees and costs incurred in litigating this action against Defendants (collectively, the "Service"). This action successfully challenged the Service's denial of a petition to remove the golden-cheeked warbler (the "Warbler") from the endangered species list. *General Land Office of Tex. v. U.S. Dep't of Interior*, 947 F.3d 309 (5th Cir. 2020).

GLO seeks an award of $381,188.17 for attorneys' fees and costs incurred by its attorneys, who are employed by Texas Public Policy Foundation ("TPPF"), for fees and costs through January 15, 2020, and reserves the right to amend to include attorneys' fees and costs incurred in preparation of this motion. *See Commissioner, INS v. Jean,* 496 U.S. 154, 162 (1990) (noting that time expended on a fee motion may be included in calculating plaintiff's fee award). The amount of $381,188.17 is comprised of $372,733.75 of attorneys' fees and $8,454.42 of costs, as set forth in the Declaration of Theodore Hadzi-Antich. Because TPPF is a non-profit organization under Section 501(c)(3) of the Internal Revenue Code, GLO was not billed attorneys' fees or costs in connection with this lawsuit and GLO is assigning an award of attorneys' fees and costs pursuant to this motion to TPPF, as set forth in the Declaration of Mark A. Havens.

In support of its motion, GLO states as follows:

### I.   BACKGROUND

#### A. The Plaintiff

Among other things, GLO owns or maintains public school lands which contain Warbler habitat, and GLO is charged with maximizing revenues from Texas public lands dedicated to the Permanent School Fund. Dkt. 56, [Corrected] Second Amended Complaint at 3-4. GLO maximizes those revenues from the sale and mineral leasing of public school lands, which under

1

the Texas Constitution flow to the Permanent School Fund via GLO.  Tx. Const. Art. VII §5(g).  GLO's ability to maximize revenues from Texas public school lands is undermined by restrictions imposed by the continued listing of the Warbler under the Endangered Species Act (the "ESA") due to the presence of Warblers on GLO property.  Dkt. 56 at 3-7.

### B. Procedural History and Final Ruling

Any interested party can petition to add or remove a species from the endangered species list.  16 U.S.C. § 1533(b)(3).  Within ninety days of receiving such a petition, there should, "[t]o the maximum extent practicable," be a finding "as to whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted."  *Id.* § 1533(b)(3)(A).  If this ninety-day finding is negative, it is subject to judicial review.  *Id.* § 1533(b)(3)(C)(ii).  When the Service denied the petition to delist the Warbler, then-applicable regulations defined "substantial" information as "that amount of information that would lead a reasonable person to believe that the measure proposed in the petition may be warranted."  50 C.F.R. § 424.14(b)(1) (2014).

On June 29, 2015, a petition to delist the Warbler was filed by a group of interested parties.  Dkt. 56, Petition to Remove the Golden-Cheeked Warbler from the List of Endangered Species, [Corrected] Second Amended Complaint at Ex. 4.  This petition argued that delisting was warranted because the Warbler population and the Warbler breeding habitat were larger than the Service believed when it initially listed the Warbler.  *Id.* at 13-14; *see also id.* at 15.  Additionally, the delisting petition highlighted a 2015 survey, conducted by the Institute of Renewable Natural Resources at Texas A&M, which "summarized the extensive research and analysis that has been performed since 1990 and concluded that the warbler's listing status should be re-examined."  *Id.* at 14. After reviewing the delisting petition, the Service found that it did "not provide substantial

2

scientific or commercial information indicating that the petitioned action may be warranted." Dkt. 56, 90-Day Finding, [Corrected] Second Amended Complaint at Ex. 4. Accordingly, the Service did not initiate a twelve-month review and denied the delisting petition. *Id.*

Following the Service's decision to deny the delisting petition, GLO provided the Service written notice of violation on March 1, 2017, more than 60 days prior to the filing of the initial complaint in this action. Dkt. 64-2, Declaration of Mark McAnally ("McAnally Decl."), at ¶ 3 & Ex. 1. *See* 16 U.S.C. § 1540(g)(2)(C). On June 5, 2017, Plaintiff GLO filed a lawsuit in this Court challenging the 90-day Finding. Dkt. 1. GLO alleged three causes of action, as follows: that the Service's continued listing of the Warbler as endangered violated the ESA due to the Service's continuing failure to designate critical habitat for the species for approximately three decades ("Claim 1"); that the Service misapplied the mandated statutory and regulatory standards when it denied GLO's 90-day Petition ("Claim 2"); and that the Service's original and continued listing of the Warbler failed to comply with the National Environmental Policy Act ("NEPA") ("Claim 3). Dkt, 56, [Corrected] Second Amended Complaint. This Court dismissed GLO's Claims 1 and 3, Dkt. 47, and subsequently granted the Service's motion for summary judgment on GLO's Claim 2, ruling that the Service's negative ninety-day finding and the resulting denial of the delisting petition were not arbitrary and capricious. Dkt. 78-79. GLO filed a timely notice of appeal on all three claims to the U.S. Court of Appeals for the Fifth Circuit. Dkt. 80. In a unanimous opinion, the Fifth Circuit reversed on Claim 2, agreeing with GLO that the Service applied the incorrect standard when reviewing the delisting petition, thereby acting arbitrarily and capriciously. *General Land Office of Tex.*, 947 F.3d at 312.

## ARGUMENT

### A. GLO is entitled to attorneys' fees and costs pursuant to the citizen suit provision of the Endangered Species Act.

The ESA's citizen suit provision, 16 U.S.C. §1540(g), permits any person to commence a civil suit on his own behalf under several circumstances, one of which is a suit "against the Secretary where there is alleged failure of the Secretary to perform any act or duty under section 1533 of this title which is not discretionary with the Secretary." 16 U.S.C. §1540(g)(1)(C). The relevant ESA provision, authorizes courts to "award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate." 16 U.S.C. § 1540(g)(4). An award of attorneys' fees and costs is "appropriate" under the ESA where the plaintiff has achieved "some degree of success on the merits." *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 694 (1983).

### 1. GLO is a proper party under Section 1540.

GLO is a state agency and is a proper party to sue under the citizen suit provision of the Endangered Species Act. *See* ESA citizen suit provision, 16 U.S.C. §1540(g)(1) ("any person may commence a civil suit on his own behalf . . ."); 16 U.S.C. § 1532(13) (defining "person" as including "any State" and "any department, or instrumentality . . . of any State.").

GLO also complied with the notice provision of the citizen suit provision. 16 U.S.C. §1540(g)(2)(C) ("No action may be commenced under subparagraph (1)(C) of this section prior to sixty days after written notice has been given to the Secretary"). On March 1, 2017, more than 60 days prior to the filing of the initial pleading in this action, GLO provided the Service written notice of violation in accordance with 16 U.S.C. §1540(g)(2)(C). Dkt. 56-1.

The ESA's citizen suit provision permits a civil suit under several circumstances, one of which is a suit "against the Secretary where there is alleged failure of the Secretary to perform any

act or duty under section 1533 of this title which is not discretionary with the Secretary." 16 U.S.C. §1540(g)(1)(C).

Here, the Fifth Circuit found that the Service violated Section 1533 by failing to review the petition to delist under the proper standard:

> The Service *recited* [the correct] standard, but a careful examination of its analysis shows that the Service *applied* an inappropriately heightened one.

*General Land Office of Tex.*, 947 F.3d at 320-21 (emphasis in original). This action was therefore pursuant to the citizen suit provision of the Endangered Species Act, and GLO is entitled to attorneys' fees.

### 2. GLO achieved the required degree of success in this litigation.

A plaintiff need only show "*some degree* of success on the merits" to warrant attorneys' fee being awarded. *Ruckelshaus,* 463 U.S. at 694 (emphasis added); *see also Thomas v. City of Tacoma,* 410 F.3d 644, 649 (9th Cir. 2005) ("The fact that Plaintiff failed to recover on all theories of liability is not a bar to recovery of attorney's fees."). Here, the Fifth Circuit's ruling vacating the Service's order and remanding to the agency to reconsider the petition to delist under the proper standard constitutes, at the very least, "some degree of success." *See Li v. Keisler,* 505 F.3d 913 (9th Cir. 2007) (plaintiffs became prevailing parties by obtaining an order of remand for agency review of their claims).

The Supreme Court has opined that attorneys' fees provisions in environmental statutes with similar language and purpose as the attorneys' fees provision in the Civil Rights Acts should be interpreted in a similar manner. *See Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546 (1986). In *Delaware Valley*, the Court addressed a similarly worded attorneys' fee provision in the Clean Air Act ("CAA"). The Court compared § 304(d) of the CAA, 42 U.S.C. §

5

7604(d), which authorizes fees in "any action" under the Act, with the civil rights attorneys' fees provision, 42 U.S.C. § 1988, which authorizes fees for "any action or proceeding." The Court pointed out that even though the two sections are worded slightly differently, their purposes "are nearly identical." *Delaware Valley*, 478 U.S. at 559. Specifically, § 1988 "was enacted to insure that private citizens have a meaningful opportunity to vindicate their rights protected by the Civil Rights Acts," *id.* at 559, and § 304(d) was meant to encourage "citizen participation in the enforcement of standards and regulations established under [the CAA]," *id.* at 560 (quoting S. Rep. No. 91-1196, p. 36 (1970)). The Court concluded that "given the common purpose of both § 304(d) and § 1988 to promote citizen enforcement of important federal policies, we find no reason not to interpret both provisions governing attorney's fees in the same manner."

Accordingly, "[l]ike § 304(d) of the CAA, § 11(g)(4) of the ESA is very similar to the civil rights attorney's fees provision. The ESA attorney's fees provision allows the award of attorney's fees 'to any party, whenever the court determines such award is appropriate.' Section 1988 states that a court 'in its discretion, may allow the prevailing party . . . a reasonable attorney's fee.'" *Marbled Murrelet v. Babbitt*, 182 F.3d 1091, 1095 (9th Cir. 1999).

Because GLO has served the public interest in this litigation by assisting the Service in properly interpreting and applying the ESA, it should be awarded attorneys' fees. *See Ruckelshaus,* 463 U.S. at 687 (the purpose of fee-shifting statutes is "to encourage litigation which will assure proper implementation and administration of the act or otherwise serve the public interest") (quoting H.R. Rep. No. 95-294, at 337 (1977), as reprinted in 1977 U.S.C.C.A.N. 1416); *cf. Ala. Power Co. v. Gorsuch,* 672 F.2d 1, 3 (D.C. Cir. 1982) ("the dominant consideration [for considering the "appropriateness" of attorneys' fees] is whether litigation by that party has served the public interest by assisting the interpretation or implementation of the Clean Air Act. Despite

6

the fact that the designation remained unchanged following reconsideration, plaintiffs' efforts nonetheless produced significant real-world relief in requiring defendants to actually consider the recovery benefits and provide a detailed administrative record in support of their efforts--thereby effectively legitimizing the designation nearly four years after its original issuance."); *see also Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001) (noting a "prevailing party" is one who obtains a judgment or "has been awarded some relief by the court").

### B. The requested fees are reasonable

A plaintiff who has demonstrated eligibility for and entitlement to an award of attorneys' fees must also demonstrate that the fees are reasonable. Courts awarding attorneys' fees begin by determining the "lodestar" figure, or the product of the number of hours reasonably expended on the litigation and the reasonable hourly rate for attorney services. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Blum v. Stenson,* 465 U.S. 886, 895 (1984) (in evaluating request for attorneys' fees, courts are guided by the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."). This lodestar method is to select "an appropriate hourly rate based on prevailing community standards for attorneys of similar experience in similar cases." *Shipes v. Trinity Indus.*, 987 F.2d 311, 319 (5th Cir. 1993).

The Court's first step is to determine the compensable hours listed in the attorneys' time records. *See Shipes v. Trinity Indus.*, 987 F.2d 311, 319 (5th Cir. 1993). To facilitate this determination, the fee request submitted to the court should include "contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998). The party seeking a fee award bears the burden of showing the reasonableness of the hours billed. *Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 799 (5th Cir. 2006). GLO has done so through the

7

attached Declaration of Theodore Hadzi-Antich and the attorneys' fees log submitted as Exhibit A of that declaration.

What of the fact that GLO was not successful on its two other claims? "The fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley v. Eckerhart*, 461 U.S. 424, 434-35 (1983). In one case, the Fifth Circuit affirmed an award of attorneys' fees, finding the district court's award "for work on *dismissed* state law claims was not an abuse of discretion because LifeCare achieved 'some degree of success on the merits' in the overall litigation." *LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 847 (5th Cir. 2013) (emphasis added). The court considers whether the attorney "reasonably expended" hours on work that later proved only partially successful. *Hensley*, 461 U.S. at 436. The interrelatedness of the three claims asserted by GLO makes it improper to reduce the fee award based on the complete victory with regard to one of three related claims here.

In determining the plaintiff's level of success, the court's first step is to establish "whether the claims upon which the plaintiff failed to prevail were related to the plaintiff's successful claims." *Schwarz v. Sec'y of Health & Human Servs.,* 73 F.3d 895, 901 (9th Cir. 1995). Claims are related where they "involve a common core of facts" or where they are "based on related legal theories." *Hensley,* 461 U.S. at 434-35. Claims are not related, however, where they are "distinctly different claims for relief that are based on different facts and legal theories." *Id.*

For related claims, courts evaluate "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Schwarz, 73 F.3d at 901 Id. (quoting *Thorne v. City of El Segundo,* 802 F.2d 1131, 1141 (9th Cir. 1986)). Full compensation for the unsuccessful claims is warranted where the plaintiff obtains "excellent results." *Id.* As noted by the Fifth Circuit:

8

> More commonly, however, the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Chem. Mfrs. Asso. v. U.S. Envtl. Prot. Agency*, 885 F.2d 1276, 1281-83 (5th Cir. 1989).

GLO's counsel has employed a reasonable amount of time on this matter. Specifically, as of January 15, 2020, 1,153.65 hours of attorney and paralegal time were expended litigating this case. These hours were spent, *inter alia,* reviewing the massive administrative record, including a large number of complex scientific studies, preparing a motion for summary judgment in this Court, responding to the government's motion for summary judgment, preparing a notice of appeal, preparing an opening brief in the U.S. Court of Appeals for the Fifth Circuit, and responding to the government's brief in that Court. These hours included hours researching applicable statutes, case law, and regulations, as well as preparing for and presenting at hearings and oral arguments in this Court and in the Court of Appeals.

In addition, GLO's counsel's fees are reasonable and below the prevailing market rates for similar work by similarly qualified attorneys, as established by the United States Attorney's Office Fees Matrix for the years 2015-2019 (the "USAO Matrix"), a copy of which is set forth in Exhibit B of the Hadzi-Antich declaration. The rates produced by the USAO Matrix and its predecessor (known as the Laffey Matrix) "are frequently awarded to attorneys engaged in complex federal litigation" in the District of Columbia. *Heller v. District of Columbia*, 832 F.Supp.2d 32, 48 (D.D.C. 2011). The rates set forth in the USAO Matrix are consistent with prevailing rates in other major metropolitan areas and its predecessor has been used by federal courts outside of the District of Columbia to award attorneys' fees. *See e.g., Interfaith Cmty Org. v. Honeywell International, Inc.,* 726 F.3d 403, 416 (3d Cir. 2013), *In Re HPL Technologies, Inc. Securities Litigation*, 366

9

F.Supp.2d 912, 921 (N.D. Cal. 2005); *see also Garnes v. Barnhardt,* 2006 WL 249522 *7 (N.D. Cal. 2006) ("It is the practice of the undersigned judge, however, to rely on official data to determine appropriate hourly rates . . . One reliable official source for rates that vary by experience level is the Laffey matrix used in the District of Columbia.").

Given the 40-plus years of experience of attorney Theodore Hadzi-Antich as an environmental lawyer, *see* Declaration of Theodore Hadzi-Antich at ¶¶ 3-4, s*ee Love v. Reilly,* 924 F.2d 1492, 1496 (9th Cir. 1991) ("Environmental litigation is an identifiable practice specialty that requires distinctive knowledge."), it would be inappropriate to discount his fees. At the same time, all of the rates claimed here are within the normal range for this type of litigation under the USAO Matrix and within the City in Austin. Declaration of Theodore Hadzi-Antich ¶ 6.

## CONCLUSION

For the foregoing reasons, Plaintiff General Land Office of the State of Texas respectfully submits that it be awarded the requested attorneys' fees and costs in the amount of $381,188.17 under the citizen suit provision of the Endangered Species Act.

Dated: March 20, 2020

Respectfully submitted,

  */s/Theodore Hadzi-Antich*
ROBERT HENNEKE
rhenneke@texaspolicy.com
THEODORE HADZI-ANTICH
tha@texaspolicy.com
RYAN D. WALTERS
rwalters@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
Center for the American Future
901 Congress Avenue
Austin, Texas 78701
Telephone:   (512) 472-2700
Facsimile:   (512) 472-2728

*Attorneys for Plaintiff*
*General Land Office of the State of Texas*

10

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 20, 2020 I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Western District of Texas by using the CM/ECF system, which will serve a copy of same on the counsel of record.

                                         */s/Theodore Hadzi-Antich*
                                         THEODORE HADZI-ANTICH